# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELL PULLETT,<br><br>                Plaintiff,<br><br>        vs.<br><br>A. CABRERA, et al.,<br><br>                Defendants. | 1:10-cv-02028-AWI-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER SECTION 1983<br><br>OBJECTIONS, IF ANY, DUE IN THIRTY DAYS |

## I.    BACKGROUND

Dell Pullett is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. §1983.  Plaintiff filed the Complaint commencing this action on October 29, 2010.  (Doc. 1.)   The Court screened the Complaint pursuant to 28 U.S.C. § 1915A and issued an order on October 29, 2012, dismissing the Complaint for failure to state a claim, with leave to amend.  (Doc. 11.)  On November 30, 2012, Plaintiff filed the First Amended Complaint, which is now before the Court for screening.  (Doc. 13.)

## II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausnsonbility standard. Id.

## III.   SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at the California Substance Abuse Treatment Facility in Corcoran, California. The events at issue in the First Amended Complaint occurred at Kern Valley State Prison (KVSP) in Delano, California, while Plaintiff was incarcerated there. Plaintiff names as defendants Nurse A. Cabrera (RN), Nurse Jones (LVN), Nurse Rodriguze (LVN), Correctional Officer (C/O) Morrow, Dr. Ashby, and Doe Defendants 1-10. Plaintiff's factual allegations follow.

On August 9, 2008, after passing out on the basketball court, Plaintiff was helped to the medical clinic at KVSP and informed staff that something was seriously wrong with his right foot. Plaintiff informed defendant Nurse Rodriguze that he was in severe pain, his right foot was swollen to twice its size and he could not move it, and he needed to see a doctor. C/O Morrow was working in the clinic and heard Plaintiff tell Rodriguze that he injured his foot playing basketball. After Rodriguze gave Plaintiff some ice, C/O Morrow told Rodriguze there was nothing wrong with Plaintiff and to send him back to his building, so that is what Nurse Rodriguze did. Nurse Rodriguze failed to offer Plaintiff medical treatment except the ice, and failed to contact anyone to provide Plaintiff medical attention, explaining that it was the

///

Weekend and none of the doctors were available.  Rodriguze told Plaintiff he would be seen by a doctor on Monday (three days later).

On August 11, 2008, Plaintiff waited all day to be called to the doctor, but he was not called.  Plaintiff made another request for medical care on August 18, 2008, and he was called to see Dr. Ashby on August 19, 2008, but his visit was cancelled.  On August 20, 2008, Plaintiff was seen by Dr. Ashby, who gave Plaintiff a "rudimentary examination."  Amd Cmp, Doc. 13 at 6 ¶19.  Plaintiff attempted to explain about his pain and the obvious swelling.  Dr. Ashby would not provide the treatment Plaintiff needed.  Plaintiff was told that there was nothing wrong with his foot and given Ibuprofen, even after Plaintiff told Dr. Ashby that Ibuprofen made his stomach hurt.  Dr. Ashby did not care, and gave Plaintiff Ibuprofen anyway.  Plaintiff asked for a wheelchair, and Dr. Ashby said no, but he told someone to give Plaintiff some crutches.  Plaintiff went back to his housing unit, untreated and still in pain.

On August 22, 2008, Plaintiff's right foot was x-rayed.  Plaintiff was still in considerable pain.  On August 28, 2008, the results of the x-rays were in and Plaintiff was told he would have a follow-up medical appointment.  Two weeks passed without Plaintiff being called for the appointment.  Plaintiff realized that he wasn't getting any help because he had filed an inmate appeal against medical staff and they were retaliating against him for that reason.  On September 15, 2008, Plaintiff made another request for health care, and two days later he was called.

On September 17, 2008, Dr. Ashby met with Plaintiff.  Plaintiff told Ashby that his foot was not getting better.  Ashby told Plaintiff there was nothing wrong with him.  Plaintiff asked to see another doctor, but Ashby got mad and said No, there's nothing wrong with you, get out of my office.  Then Plaintiff went to get more health care request forms.

On September 21, 2008, Plaintiff submitted more health care request forms, but the medical staff, including Dr. Ashby, refused to treat Plaintiff.  Three weeks later, Plaintiff was taken to Pacific Orthopedic Medical Group.  As soon as the Orthopedic Doctor, Dr. Paik, saw Plaintiff's foot, he said that Plaintiff needed emergency surgery.  Dr. Paik said that Plaintiff

///

should have had surgery as soon as the injury occurred, and now his foot will never be right again.  Surgery was performed on Plaintiff's foot.  Plaintiff's Achilles tendon was ruptured.

On January 11, 2009, Plaintiff saw defendant Nurse Cabrera, the supervising RN. Plaintiff explained to her that he was in pain and showed her the incision on his foot which had opened up.   The sutures from Plaintiff's surgery were not holding the incision together. Plaintiff asked Cabrera for a wheelchair, and Cabrera said yes, made a phone call, told Plaintiff to go back to his building, and he would be seen by a doctor on Tuesday morning.  Plaintiff did not see the doctor on Tuesday, and his incision was not closed up.  Plaintiff now has a big scar on his right Achilles tendon, and the foot is still swollen and tender.  Plaintiff did not see an RN for about two more weeks.

On January 30, 2009, Plaintiff informed defendant Nurse Jones (LVN) of the pain in his foot.  Nurse Jones did not offer Plaintiff the treatment he needed or contact anyone to provide the medical attention for Plaintiff.

Plaintiff filed an inmate appeal concerning the actions of defendants Rodriguze, Morrow, Jones, and Ashby.  Defendant Cabrera responded to the appeal and found no wrongful actions on behalf of herself.   Cabrera stated that since Plaintiff has transferred to another institution, he has been getting the medical care that he needs.

The doctors say that Plaintiff's foot didn't take to the surgery he had, and they don't want to do anything else.  Plaintiff asserts that if the doctor would have sent him to the hospital right away when he ruptured his Achilles tendon, his foot would be healed by now.  Plaintiff's incision is still swollen and tender, and he has a big scar on his right Achilles tendon.  Plaintiff is ambulatory only by wheelchair or cane, and has problems with balance.   As a result of Defendants' actions, Plaintiff suffered emotional distress and other injuries.

Plaintiff requests monetary damages as relief.

## IV.    PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:
Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actors knows or reasonably should know would cause others to inflict the constitutional injury." Johnson at 743-44).

## A.   Eighth Amendment Medical Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a

prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).   Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id.   Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.   McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

   "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation."  Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

   "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

   Plaintiff alleges that he saw medical staff several times, described his painful and swollen foot, and was not given the medical care he needed.  Medical staff treated him by taking x-rays, offering Ibuprofen, crutches, and ice, and approving a wheelchair.  When

Plaintiff's foot did not improve, he was told nothing was wrong with him and medical staff refused to see him.  Eventually, Plaintiff saw an outside doctor who determined that Plaintiff needed emergency surgery on his foot.

Plaintiff describes unhelpful medical care, a delay before it was determined he needed surgery, and lack of subsequent medical procedures when his foot did not heal after surgery, but he does not allege facts showing that any of the Defendants knew that he had a serious medical need and purposely disregarded a substantial risk of serious harm to Plaintiff.  The most Plaintiff has alleged is negligence, gross negligence, or medical malpractice, which is not actionable under § 1983.  Therefore, Plaintiff fails to state a cognizable claim for inadequate medical care under the Eighth Amendment against any of the Defendants.

**B.    Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (quotation marks omitted); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff satisfied the first element by alleging he filed an inmate grievance against medical staff, and he satisfied the second element by alleging that medical staff refused to see him after he filed the grievance.  However, Plaintiff has not sufficiently alleged a causal connection between the adverse action and the protected conduct.  A causal connection can be inferred by timing or circumstantial evidence, Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent"), and Plaintiff alleges that he was denied adequate medical care from the time he filed the grievance against medical staff.  In this particular case, however, there is little else besides Plaintiff's bare

assertion to support the inference.  Plaintiff does not indicate the date he filed the grievance, and his allegations of medical care do not support any retaliatory intent.  Moreover, Plaintiff has not alleged that the medical staff's refusal to see or treat him did not reasonably advance a legitimate penological goal.  Under Plaintiff's alleged facts, Plaintiff was examined and provided x-rays, crutches, a wheelchair, ice, and Ibuprofen after he injured his foot on the basketball court.  Later, Plaintiff was refused additional medical appointments after Dr. Ashby told Plaintiff there was nothing wrong with him to be treated.  Under these circumstances, it appears reasonable that medical staff stopped scheduling medical appointments for Plaintiff.  Not scheduling unneeded appointments would serve a legitimate penological goal.

Therefore, the Court finds that Plaintiff does not state a cognizable claim for retaliation against any of the Defendants.

### C.      Verbal Harassment and Threats

Verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Therefore, Plaintiff's claim that Defendants engaged in "intimidation, abuse, and harassment" against him, without more, is not cognizable.  Amd Cmp at 13 ¶27.

### D.      State Law

Plaintiff alleges that Defendants were negligent in treating him, failed to properly train and supervise employees, and intentionally inflicted emotional distress upon him.  Violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983.  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.  In this instance, the Court fails to find any cognizable federal claims in the First Amended Complaint.  Therefore, Plaintiff's state law claims fail.

///

8

**V.      CONCLUSION AND RECOMMENDATIONS**

The Court finds that Plaintiff's First Amended Complaint fails to state any claims upon which relief can be granted under § 1983 against any of the Defendants.  In this action, the Court previously granted Plaintiff an opportunity to amend the complaint, with ample guidance by the Court.   Plaintiff has now filed two complaints without alleging facts against any of the Defendants which state a claim under § 1983.  The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, **IT IS HEREBY RECOMMENDED** that pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e), this action be dismissed with prejudice for failure to state a claim upon which relief may be granted under § 1983, and that this dismissal be subject to the "three-strikes" provision set forth  in 28 U.S.C. § 1915(g).  <u>Silva v. Vittorio</u>, 658 F.3d 1090, 1098 (9th Cir. 2011).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 13, 2013**                                 **_____/s/ Gary S. Austin_**
                                                          UNITED STATES MAGISTRATE JUDGE